IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JUAN M. FLORES, #B-50218, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 18-CV-1127-SMY |
| WEXFORD, TAMMY PITTAYATHIKAN, DR. DAVID, TERRY BEEGLE, CASEY FREEMAN, KAREN SMOOT, and JEFFREY DENNISON, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Juan M. Flores, an inmate currently housed at Shawnee Correctional Center filed this *pro se* action pursuant to 42 U.S.C. § 1983, pertaining to his prior incarceration at Vienna Correctional Center (Vienna). Specifically, Plaintiff alleges that Vienna officials were deliberately indifferent to his serious medical needs. In connection with his claims, Plaintiff sues Wexford Health Sources, Inc., Tammy Pittayathikan (Nurse Practitioner, Vienna), Dr. David (Physician, Vienna), Terry Beegle (Licensed Practical Nurse, Vienna), Casey Freeman (Licensed Practical Nurse), Karen Smoot (Health Care Administrator, Vienna), and Jeffrey Dennison (Warden, Vienna).

This case is now before the Court for a preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, which provides:

(a) **Screening** – The court shall review, before docketing, if feasible or, in any

event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

    (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

        (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

        (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff makes the following allegations in the Complaint: Plaintiff has a history of "spine problems." (Doc. 1, p. 5). In April or May 2017, Plaintiff met with Pittayathikan and asked her to renew his bottom bunk permit, which was scheduled to expire on June 3, 2017. (Doc. 1, p. 5; Doc. 1-1, p. 11). Pittayathikan referred Plaintiff to Dr. David. *Id.* Plaintiff met with Dr. David several times regarding his request for a renewed bottom bunk permit and attempted to show him medical records documenting his condition. *Id.* Dr. David refused to review Plaintiff's paperwork and denied his requests. *Id.*

On or about August 13, 2017, Plaintiff was climbing down from the top bunk when his

2

back locked up and his foot slipped. (Doc. 1, p. 5; Doc. 1-1, p. 10). Plaintiff landed on his left foot with all of his weight. (Doc. 1-1, p. 10). He later learned that his leg was broken. (Doc. 1, pp. 5-6; Doc. 1-1, pp. 3, 11). Plaintiff claims that he would not have broken his leg if Dr. David had granted his request for a bottom bunk permit. (Doc. 1, p. 5). Additionally, as is set forth more fully below, Plaintiff claims that Dr. David and other officials at Vandalia exhibited deliberate indifference to his broken leg. (Doc. 1, pp. 5-7).

### Terry Beegle

Beegle was the nurse on duty when Plaintiff broke his leg. (Doc. 1, p. 6). Plaintiff told Beegle he was in excruciating pain. *Id.* Beegle concluded Plaintiff was merely suffering from a sprained ankle. (Doc. 1, p. 6; Doc. 1-1, p. 10). He bandaged Plaintiff's ankle, prescribed 200 mg of Ibuprofen, and provided crutches. (Doc. 1, p. 6). Beegle did not refer Plaintiff for any follow-up treatment. *Id.*

### Casey Freeman

Freeman examined Plaintiff on August 16, 2017. *Id.* Plaintiff told her he was in excruciating pain. *Id.* Freeman measured Plaintiff's ankle and referred him to the nurse practitioner, but did not provide any other treatment. *Id.*

### Tammy Pittayathikan

Pittayathikan examined Plaintiff on August 18, 2017 and ordered an x-ray. (Doc. 1, p. 5; Doc. 1-1, p. 11). The x-ray revealed multiple fractures in Plaintiff's lower left tibia. *Id.* Pittayathikan instructed a nurse to place a splint on Plaintiff's injured leg, but the splint was set incorrectly. (Doc. 1, p. 5). Pittayathikan then prescribed 600 mg of Ibuprofen and told Plaintiff to return to his cell. *Id.* According to Plaintiff, she "made it seem like multiple fractures were no[t] emergency medical issues." *Id.* On August 23, 2017, after a radiologist reviewed

3

Plaintiff's x-rays, Pittayathikan told Plaintiff the fractures were worse than she originally thought. (Doc. 1-1, p. 11). She then told Plaintiff he would be referred to an outside orthopedic specialist. *Id.*

Plaintiff was examined by the orthopedic specialist on August 28, 2017 and August 30, 2017. (Doc. 1, p. 11). The specialist told Plaintiff his injury was "significant" and ordered a CT scan; he suspected Plaintiff's lower tibia may have splintered into his ankle and suggested that the injury would require surgery. *Id.*

### Dr. David

A grievance attached to the Complaint indicates that Plaintiff's first visit with Dr. David was on September 5, 2017.[1] (Doc. 1-1, p. 11). At that time, Plaintiff was in "agonizing" pain. (Doc. 1, p. 5). Dr. David prescribed 800 mg of Ibuprofen. (Doc. 1-1, p. 11). It is not clear if Plaintiff received any other treatment from Dr. David during this visit. However, Plaintiff complains that Dr. David failed to treat his broken leg as an emergency. (Doc. 1, p. 5).

Plaintiff did not return to the orthopedic specialist until September 21, 2017. *Id.* According to the Complaint, Plaintiff was supposed to have a steel plate and screws surgically placed in his ankle, but too much time had passed and his leg had begun to heal. *Id.* As a result, the surgeon did not proceed with the surgery. (Doc. 1, p. 6). The surgeon indicated that Plaintiff's "leg appeared to be healing straight." *Id.* However, Plaintiff still has difficulty walking and standing on the injured ankle. *Id.*

### Karen Smoot

Plaintiff filed several grievances directed to Smoot. (Doc. 1, p. 6; Doc. 1-1, pp. 2-4). In the grievances, he complained about being charged a $5.00 co-payment for his August 13, 2017

---

[1] According to the Complaint, Dr. David did not examine Plaintiff until sometime after August 29, 2017. (Doc. 1, p. 5).

medical examination (the visit with Nurse Beegle immediately following the initial leg injury). *Id.* Plaintiff believes the treating nurse mistakenly classified his initial visit as a non-emergency. Although it is not entirely clear, Plaintiff appears to think charging a co-payment for an emergency visit violates Illinois state law. *Id.*

### Jeffrey Dennison

Plaintiff claims Dennison violated his rights "by ignoring the fact that Wexford Healthcare does not provide proper medical treatment for emergencies." (Doc. 1, p. 7). He also believes that Dennison lacks a "sense of authority" and claims that Dennison is to blame for various deficiencies in the prison's grievance process. *Id.*

### Dismissal of Certain Defendants

*Dennison*

The Complaint does not include any allegations suggesting that Dennison, through his own conduct, violated the Constitution. Instead, Plaintiff relies on a theory of *respondeat superior*, which is not applicable to § 1983 actions. *See* e.g., *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015); *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). Additionally, Plaintiff cannot maintain a claim against Dennison based on alleged deficiencies in the grievance process. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Accordingly, Dennison will be dismissed from the case without prejudice for failure to state a claim upon which relief may be granted.

*Wexford*

Wexford is a corporation that employs health care providers at Vienna and provides medical care to inmates, but it cannot be held liable solely on that basis. Rather, a corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d

917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff has identified no such policy. Accordingly, Wexford will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Merits Review Under § 1915(A)**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following Counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these Counts does not constitute an opinion regarding its merit.

**Count 1 –** Dr. David exhibited deliberate indifference to Plaintiff's serious medical condition (spine problems) by failing to renew his bottom bunk permit, in violation of the Eighth Amendment.

**Count 2 –** Pittayathikan, Dr. David, Beegle, and Freeman exhibited deliberate indifference to Plaintiff's serious medical condition (fractured leg), in violation of the Eighth Amendment.

**Count 3 –** Constitutional claim against Beegle for requiring Plaintiff to pay a $5.00 co-payment for the August 13, 2017 medical examination and against Smoot for denying his grievances pertaining to the same.

**Count 1**

The Eighth Amendment protects inmates from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). Deliberate indifference to serious medical needs of inmates may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). In order to state such a claim, an inmate must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

6

The Seventh Circuit has held that a medical need is objectively serious if it has either "been diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). In the instant case, Plaintiff claims he has a history of "spine problems." The Complaint also suggests that Plaintiff previously received a bottom bunk permit because of his spinal condition. These allegations satisfy the objective component for screening purposes. However, the analysis does not end there.

The Complaint allegations must also suggest that Dr. David exhibited deliberate indifference to Plaintiff's serious medical need. The Constitution requires a doctor to take "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). But, an inmate is not entitled to "demand specific care" or "the best care possible." *Id.* According to the Complaint, Dr. David refused to even review Plaintiff's medical records prior to declining to renew his bottom bunk permit. At this early stage, this is sufficient to allow Count 1 to proceed as to Dr. David.

**Count 2**

Plaintiff's fractured leg also constitutes an objectively serious condition for screening purposes. The Complaint suggests that Nurses Pittayathikan, Beegle, and Freeman, as well as Dr. David, may have responded with deliberate indifference to this serious medical condition. Read liberally, the Complaint indicates that these individuals may have exhibited deliberate indifference to Plaintiff's fractured leg by pursuing an ineffective course of treatment, failing to treat Plaintiff's pain, and/or delaying treatment. Therefore, Plaintiff will be permitted to proceed on Count 2. *See Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012); *Brown v. Darnold*, 505 F. App'x. 584 (7th Cir. 2013).

## Count 3

Plaintiff contends he was wrongfully charged a $5.00 co-payment for the initial medical examination for his injured leg. According to Plaintiff, had Nurse Beegle correctly classified the visit as an emergency, he would not have been responsible for a co-payment. Plaintiff also complains about Smoot denying his grievances pertaining to the allegedly wrongful charge.

"The imposition of a modest fee for medical services, standing alone, does not violate the Constitution." *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012). *See also Hightower v. Godinez,* 524 F.App'x 294, 296 (7th Cir. 2013) ("[I]t is not deliberate indifference for prison medical professionals to insist that inmates who are financially able to tender a required co-payment before receiving care."); *Jones–Bey v. Cohn*, 115 F.Supp.2d 936, 940 (N.D. Ind. 2000) (" 'Co-pay' policies under which inmates must bear part of the cost of their treatment are Constitutionally permissible if they do not interfere with timely and effective treatment of serious medical needs.").

In the instant case, there is no indication that the subject co-payment interfered with Plaintiff's receipt of medical care or otherwise violated his constitutional rights. Further, to the extent that Plaintiff argues he was exempt from the co-payment because he met a statutory exception for emergency treatment under Illinois law, that is a question of state law which cannot form the basis for a § 1983 claim. *See* Poole, 703 F.3d at 1027. Accordingly, Count 3 will be dismissed without prejudice.

## Pending Motions

Plaintiff's Motion to Appoint Counsel (Doc. 3) shall be referred to United States Magistrate Judge Reona J. Daly for further consideration.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** will proceed as to **DAVID**.

**IT IS FURTHER ORDERED** that **COUNT 2** will proceed as to **DAVID, PITTAYATHIKAN, BEEGLE,** and **FREEMAN.**

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that **WEXFORD, SMOOT,** and **DENNISON** are **DISMISSED** from the Complaint without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for **DAVID, PITTAYATHIKAN, BEEGLE,** and **FREEMAN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Plaintiff. If one of the defendants fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the

Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Reona J. Daly for further pre-trial proceedings, including Plaintiff's Motion for Appointment of Counsel. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Daly for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 22, 2018**

s/ STACI M. YANDLE
**U.S. District Judge**
